# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 CR 818 | **DATE** | 8/19/2002 |
| **CASE TITLE** | | USA vs. William Jarding | |

**MOTION:**    [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____ .

(3)  ☐  Answer brief to motion due_____ .  Reply to answer brief due_____ .

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____ .

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .

(7)  ☐  Trial[set for/re-set for] on _____ at _____ .

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10)  ■  [Other docket entry]  For the reasons set forth on the attached order, the Court denies defendant's motion to suppress and his motion for an evidentiary hearing (17-2,18-1,18-2).

(11)  ■  [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG 2 3 2002 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 29 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| OR | courtroom deputy's initials | | | |
| | Date/time received in central Clerk's Office | | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | **Case No. 01 CR 818** |
| | ) | |
| WILLIAM JARDING | ) | |

**DOCKETED**

AUG 2 3 2002

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Defendant William Jarding is charged with possession and transfer of stolen ammunition

in violation of 18 U.S.C. §922(j) and with having conspired with Joseph Medzianowski, then a

Chicago police officer, to receive, possess, and transfer stolen ammunition in violation of 18

U.S.C. §371. Jarding was a Cook County correctional officer at the time of the alleged offenses.

The charges arise in part from telephone conversations between Jarding and Medzianowski that

were intercepted as a result of an order issued by then-Chief Judge Marvin Aspen under Title III

of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §2518, authorizing

interception of communications to and from telephone numbers subscribed to by Medzianowski.

Medzianowski was prosecuted separately for these and other offenses.

Jarding has moved to suppress the fruits of the Title III intercept. He argues that the

application submitted in support of the Title III intercept failed to establish probable cause; failed

to establish "necessity" for the intercept as required by Title III; contained knowing material

misrepresentations supporting the claim of probable cause; and knowingly omitted material facts

that would have undermined probable cause. Medzianowski made a similar motion in his

separate case, which Jarding has adopted in its entirety. The judge presiding over

Medzianowski's case denied the motion, though without a written ruling and evidently without a contemporaneous oral explanation of the grounds for the denial. For the reasons set forth below, the Court rejects Jarding's arguments and denies his motion to suppress.

## 1. Introduction

Title III generally prohibits interception of wire and electronic communications except as authorized under the statute. 18 U.S.C. §2511. Section 2518 provides the requirements that govern applications for and entry of orders authorizing intercepts. The application must be made in writing under oath and must include, among other things, "full and complete statement[s]" of the facts and circumstances relied on by the applicant to justify his belief that an order should be issued, whether other investigative procedures have been tried and failed or why they reasonably appear to be too dangerous or unlikely to succeed if tried, and the facts concerning all previous applications made to any judge for authorization to intercept communications involving any of the persons, facilities, or places described in the application. *Id.* §2518(1). Before granting authorization, the judge must determine that there is probable cause to believe that a person is committing, has committed, or is about to commit one of the offenses listed in 18 U.S.C. §2516; that there is probable cause to believe that communications concerning that offense will be obtained through the interception; that normal investigative procedures have been tried and have failed or reasonably appear to be too dangerous or unlikely to succeed if tried; and that there is probable cause to believe that the facilities from which the communications are to be intercepted are being or are about to be used in connection with the offense, or are listed to or commonly used by a person identified in the application. *Id.* §2518(3).

2

## 2. Probable cause

The standard for probable cause under Title III is identical to that under the Fourth Amendment. *E.g., United States v. Leisure,* 844 F.2d 1347, 1354 (8th Cir. 1988). Probable cause exists when the totality of the circumstances reveals a reasonable probability of criminal activity. *United States v. Levy,* 990 F.2d 971, 973 (7th Cir. 1993); *United States v. Dorfman,* 542 F. Supp. 345, 359 (N.D. Ill. 1982), *aff'd sub nom. United States v. Williams,* 737 F.2d 594 (7th Cir. 1984). The affidavit submitted in support of the Title III application must contain facts sufficient to warrant a person of reasonable caution to believe that criminal activity is afoot and that evidence of that activity will be captured via the intercept. 18 U.S.C. §2518(3); *Dorfman,* 542 F. Supp. at 359. The Court must examine at the totality of the circumstances, *see Illinois v. Gates,* 462 U.S. 213, 230-32 (1983), and should not treat as a separate universe each aspect of the showing made in the application. *Leisure,* 844 F.2d at 1354-55. And the possibility of an innocent explanation for the activity described in the application does not negate probable cause, so long as there is a reasonable probability of criminal activity. *Levy,* 990 F.2d at 973.

Looking at the totality of the circumstances described in the affidavit of FBI Agent Patrick Loll submitted in support of the application, there was probable cause to believe that Medzianowski was involved in criminal activity within the scope of 18 U.S.C. §2516 and that interception of his communications would capture evidence of that activity.

Loll's affidavit described information the government had received from two confidential sources, identified as CS #1 and CS #2. CS #1 was identified as a street gang member who had previously provided reliable information. CS #1 reported information that he had learned from two individuals, Rolando Otero and Nelson Padilla. According to CS #1, Medzianowski was

involved in criminal activity along with a drug dealer known as "Casper," who Loll said had been identified via prison and telephone records as Juan Martir. Martir was identified as being in federal custody in Florida pending trial on drug charges. CS #1 reported that he had been told that Martir was paying Medzianowski for protection of his drug trafficking operation, and that Martir and Medzianowski were involved in robbing and extorting drug dealers, including Otero. According to CS #1, he had been told that because Martir was in jail, Medzianowski was assisting him in running drugs, by escorting Martir's girlfriend and courier, Cindy Rodriguez, from O'Hare Airport to a safe house in Chicago when she came to Chicago with drugs. Otero had reported to CS #1 that Medzianowski had "fixed" criminal cases against gang members in return for money, and that in one specific case, Medzianowski had approached the arresting officer and had offered him money to fix the case. Padilla had reported to CS #1 that he and Medzianowski had robbed drug dealers together. CS #1 also provided details about phone numbers used by Otero.

CS #2 was described as a person who had been incarcerated in the Miami Federal Detention Center on drug charges from October 1997 through August 1998, when he was released on bond to facilitate his cooperation with federal agents in Florida, who believed him to be reliable. CS #2 was Martir's cell mate at FDC Miami for a four month period in 1998; he reported that during that time, Martir had confided in him to try to recruit him into his organization. According to CS #2, Martir said that he was a high ranking official in a street gang, responsible for transporting cocaine to Chicago with assistance from Medzianowski and others. Martir told CS #2 that his girlfriend Cindy Rodriguez would bring kilogram quantities of cocaine to Chicago and that Medzianowski and his partner, a police officer named John, would

4

escort her to a "stash house." Martir reported that his former girlfriend Yolanda (identified by phone records, according to Loll, as Yolanda Navarro) maintained the stash house. He also told CS #2 that he had a child with Yolanda whose name was Dennis. According to CS #2, Martir said that Medzianowski had his own drug distribution organization through which he sold at the wholesale and retail level cocaine given to him by street gang members in return for protection. Martir was said to have told CS #2 that Medzianowski's retail operation included a street corner at which $65,000 to $75,000 per day worth of crack cocaine was sold. CS #2 stated that Martir had told him that before Martir's incarceration, a man named Franky had transported cocaine to Chicago, but that Franky was now working on his own due to Martir's incarceration, including supplying cocaine to Medzianowski at a discount. CS #2 also reported that Martir had told him that Medzianowski had a crew of police officers who stole from drug dealers and that he and Medzianowski were currently planning a robbery of a rival dealer. Martir also identified Nelson Padilla as a gang member who was a close associate of Martir and Medzianowski. Finally, Martir reported that he communicated with Medzianowski via the telephones at FDC Miami, knowing that the conversations were tape recorded and thus trying to make it appear that he was a legitimate source of information for Medzianowski. Agent Loll reported that there was no evidence that CS #2 knew CS #1 or that he had known Martir before they were jailed together.

Loll reported that between July 7 and August 18, 1998, Martir had made 20 telephone calls to Medzianowski from the FDC Miami telephones, all of which were consensually recorded pursuant to Bureau of Prisons policy. Excerpts of certain conversations were set forth in the application. They reflected, among other things, the following:

- Martir, who stated that was cooperating with federal prosecutors in Miami,

5

expressed concern about giving up "Frankie," indicating that he needed to provide the prosecutors with a name to "collaborate [sic] one thing." In response, Medzianowski suggested that Martir provide the prosecutors with the name of someone who was already dead.

- Discussion about Medzianowski taking care of Dennis (Martir's son).

- A request by Medzianowski for advance information about who Martir was naming to the Florida federal prosecutors.

- Medzianowski reporting that Nelson Padilla was aware Martir was cooperating, and discussing the possible risks to Martir and his relatives from Padilla.

- Martir suggesting that he was not planning to cooperate fully with the Florida federal prosecutors but rather would hold back some information and names.

- Martir discussing the need to "tak[e] care of" a person who was a possible source of information against them.

- Martir indicating that he wanted to keep the authorities from knowing about Medzianowski, saying that he would avoid giving information about "those that I know I'm not to hit," and telling Medzianowski, "You know I'm a friend for life."

This information, taken collectively, was indicative of an illegitimate criminal relationship between Medzianowski and Martir, as opposed to a legitimate police officer - informant relationship.

Loll also reported that telephone records reflected that Medzianowski had been placing telephone calls to some of the same people in Chicago as Martir, and specifically that Medzianowski had been placing calls to people identified as criminal associates of Martir and

Medzianowski.

In arguing that probable cause was lacking, Jarding attempts to compartmentalize the various aspects of the application, analyzing each separately in an attempt to show that it did not establish probable cause. That is not the correct approach. *See, e.g., Leisure,* 844 F.2d at 1354-55. Though it is likely that the statements of either of the government's informants, standing alone, would not have supported a finding of probable cause, those statements did not stand alone. *See United States v. Reddrick,* 90 F.3d 1276, 1281 (7th Cir. 1996). First of all, the statements of CS #1 and CS #2 corroborated each other with respect to Martir's involvement in a drug trafficking operation, Medzianowski's illicit assistance to that operation, identification of the criminal associates of Martir and Medzianowski, and the involvement of the two men in other criminal activity (namely, robberies of drug dealers). Second, the phone records previously discussed reflected a steady flow of communications between Medzianowski and persons identified by the confidential sources and in the Martir-Medzianowski conversations as criminal associates of the two; this likewise supported an inference of ongoing criminal activity in which Medzianowski was participating. *See, e.g., United States v. Gonzalez,* 866 F.2d 781, 787 (5th Cir. 1989); *United States v. Shipp,* 578 F. Supp. 980, 986 (S.D.N.Y. 1984). And third, the conversations between Martir and Medzianowski were indicative of an illicit relationship, particularly those discussions that were reasonably interpreted as suggestions that Martir should provide incomplete or inaccurate information to the Florida federal prosecutors and that Martir would protect Medzianowski from exposure. All told, the evidence described in Loll's affidavit was more than sufficient to reveal a reasonable probability of criminal activity involving Martir, Medzianowski, and others, as well as a reasonable basis to believe that interception of calls made

7

from Medzianowski's telephones likely would reveal evidence of criminal activity. For these reasons, the Court holds that the application established probable cause as required by the Fourth Amendment and Title III.

### 3.    *Franks v. Delaware*

Jarding argues that the Title III application included misrepresentations and omitted material facts. A warrant that is issued as a result of material and deliberate false statements or omissions cannot stand. *See Franks v. Delaware,* 438 U.S. 154, 165 (1978). To obtain a hearing under *Franks,* a defendant must make a substantial preliminary showing that the warrant application contained a false statement or material omission; that this was done knowingly or with reckless disregard for the truth; that, in the case of a false statement, the affidavit does not establish probable cause if the false statement is excised; and that, in the case of an omission, the affidavit would not support a finding of probable cause if the omitted material were included. *Id.* at 155-56; *United States v. McNeese,* 901 F.2d 585, 593-94 (7th Cir. 1990); *United States v. Williams,* 737 F.2d 594, 604 (7th Cir. 1984). *See also United States v. Jackson,* 65 F.3d 631, 635 (7th Cir. 1995).

Jarding argues that the application falsely claimed that Martir had assured Medzianowski that he would not let the authorities know that the latter was a corrupt police officer. Jarding is correct that these words are not contained in the conversation excerpts that were provided with the application or in any other conversation identified to this Court. But the application's claim was plainly a characterization, not a quote. And in this Court's view, it was a fair and reasonable characterization of Martir's comments, taken in context, about being a "friend for life" of Medzianowski and his understanding that there were persons that Martir knew he was "not to

8

hit" in cooperating with prosecutors. For these reasons, and because the underlying statements were quoted, the application's characterization could not have been material to the issuance of the Title III order.

The inclusion of information regarding a purported informant-police officer relationship between Martir and Medzianowski – a fact that Jarding alleges was intentionally omitted – would not have undermined the showing of probable cause. As the government correctly notes, the existence of such a relationship in no way precluded the existence of a parallel, illegitimate relationship between the two men, nor would it have colored in any appreciably different way the conversations disclosed in the application.

Jarding also attacks the application's alleged omission of Martir's concern that he had not yet received a grant of immunity in connection with his cooperation with Florida prosecutors, a fact that Jarding says would have helped explain the guarded language that Martir used on the telephone. But the quoted excerpts mentioned this very fact. And assuming that a lack of proper emphasis of an included fact could give rise to a viable *Franks* issue, inclusion of a more specific discussion of the fact that Martir did not have a signed deal and thus had no protection against use of information he provided would not have in any way undercut the application's showing of probable cause.

Jarding next argues that the application omitted a fair discussion of the "dynamics" of Martir's cooperation, specifically that Martir was concerned about cooperating against his co-defendants in the pending Florida case and was more desirous of cooperating against people in Chicago through Medzianowski, who he served as an informant. This, Jarding claims, would have served to explain why Martir was talking to Medzianowski about criminal activity in

9

Chicago. Again, the Court disagrees. First of all, Jarding fails to show that Martir was not cooperating in Florida; according to the government, his plea agreement had been signed in late July 1998, before the Title III application was filed, and Martir was, at that point, cooperating with the Florida prosecutors concerning his case there. Second, Jarding fails to show that this alleged misplacement of emphasis in any way affected, or could have affected, the determination of probable cause. It would not have colored in any appreciable way the inculpatory conversations between Martir and Medzianowski, nor would it have undermined the import of the other information supplied to support of the application.

Jarding also argues that the government falsely characterized Medzianowski's comment about naming dead persons as a proposal to give false information, rather than as the "joke" that he says it was. But the actual passage was quoted in context in the application, thus the reviewing judge was able to draw his own conclusions. As noted earlier, the Court believes that Medzianowski's comment is fairly read as a suggestion that Martir provided false information to the authorities in order to protect their criminal associates.

The Court also rejects Jarding's argument that the omission of CS #1's criminal history was material to the finding of probable cause. First of all, there is no evidence that the government had actual knowledge of CS #1's criminal history. But even assuming that it did, or that it recklessly disregarded his criminal history, the omission was not material. The application identified CS #1 as a street gang member, and it is relatively apparent to any reader familiar with the criminal justice system – including, of course, Chief Judge Aspen – that he therefore was likely to be regularly engaged in criminal activity. Under the circumstances, whether CS #1 had in the past been *convicted* of such activity was not significant to the showing of probable cause.

In any event, because CS #1's information was corroborated by other information in the application, the omission of his criminal history was not material.

Finally, the fact that Medzianowski had, some years earlier, been investigated for robbing drug dealers without any charges being brought would have had no bearing whatsoever on the existence of probable cause at the time of the Title III application. The omission of that fact was completely immaterial.

The Court has also considered the cumulative effect of the alleged misrepresentations and omissions. Together, the matters raised by Jarding do not undermine the basis for probable cause established by the application. For these reasons, the Court determines that Jarding has failed to make the showing necessary to entitle him to a hearing under *Franks v. Delaware.*

## 4. Necessity

As indicated earlier, before issuing an order authorizing a Title III intercept, the judge reviewing the application must determine that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. §2518(3)(c). The purpose of this requirement is to ensure that wiretapping is not routinely used as an initial step in criminal investigations. *United States v. Giordano,* 416 U.S. 505, 515 (1974). It does not, however, require that wiretaps be used "only as a last resort." *United States v. Thompson,* 944 F.2d 1331, 1340 (7th Cir. 1991). Accordingly, the government is not required to show that it has exhausted other investigative alternatives in order to satisfy §2518(3)(c), but rather "only that the success of other methods of investigation appear unlikely." *Id.* Common-sense rationales can satisfy the government's burden. *See United States v. Adams,* 125 F.3d 586, 595-96 (7th Cir. 1997).

11

In this case, the government established its burden of showing that normal investigative methods reasonably appeared unlikely to succeed. There was a reasonable basis to believe that interviewing the alleged participants in the criminal enterprise would not prove fruitful and "would both alert them (and possibly others higher up in the conspiracy) or would require grants of immunity." *Adams*, 125 F.3d at 595. Martir, a possible candidate for a direct approach because he was already facing federal criminal charges, had demonstrated on the previously recorded conversations an ongoing loyalty to Medzianowski that he was evidently willing to preserve despite the fact that he likely would have stood to benefit in terms of his ultimate sentence in Florida if he had disclosed his criminal activities with Medzianowski. Surveillance might have disclosed some contacts between the conspirators, but it likely would have shown nothing more than their association – a fact already established by the phone records the investigators had obtained – as contrasted with the evidence of knowledge and participation that their conversations might disclose. Issuance and execution of search warrants would have disclosed the government's investigation of the criminal enterprise, and in any event there was no reason to believe that evidence of a conspiracy – beyond mere possession of narcotics – would have been revealed via search warrants. And there was no basis to believe that the government could recruit any participant as a confidential source – and again, an unsuccessful attempt to do so would have disclosed the existence of the investigation and allowed the conspirators to attempt to conceal their involvement.

Based on the application and common sense, these and other normal investigative procedures reasonably appeared to be unlikely to succeed. The Court rejects Jarding's argument that the Title III application failed to establish the requisite necessity for wiretapping.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to suppress and his motion for an evidentiary hearing [docket items 17-2, 18-1, 18-2].

MATTHEW F. KENNELLY
United States District Judge

Date: August 19, 2002